(No. 40165.—

THE PEOPLE *ex rel.* Chester Carroll, Petitioner, *vs.* MAX P. FRYE, Warden, Respondent.

*Opinion filed November 14, 1966.*

THOMAS P. SULLIVAN and JOAN M. MCMAHAN, both of Chicago, and JOHN A. JURUS, of Tinley Park, (RAYMOND, MAYER, JENNER & BLOCK, of counsel,) for petitioner.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL and JOHN J. O'TOOLE, Assistant Attorneys General, of counsel,) for respondent.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

We granted leave to file this original petition for a writ of *habeas corpus* to consider the claim of the petitioner that he is entitled to receive credit upon his penitentiary sentence for the period during which he was incarcerated awaiting trial. The parties agree that the petitioner was arrested on February 26, 1964, that on March 11, 1964, he was indicted upon a charge of unlawful possession of narcotic drugs, that he was financially unable to post bond, and that he was in-

carcerated in the county jail of Cook County from February 26, 1964 until July 14, 1964, when he was sentenced to imprisonment in the penitentiary for a term of not less than two nor more than three years. It is stipulated that during his incarceration in the county jail he did not violate any "good behavior regulations" of that institution. It is undisputed that if the petitioner is given credit upon his sentence for the time that he spent in the county jail prior to the imposition of sentence upon him, he would have been entitled to be released on August 29, 1966.

Section 119—3 of the Criminal Code, as amended in 1965, provides in part: "The period of time during which any person was confined to answer to a charge which results in a sentence imposed on or after July 1, 1965 requiring such person to be imprisoned in a penitentiary or reformatory or any other penal institution of the State or of any of its political subdivisions prior to pronouncement of such sentence shall be credited on such sentence unless he violates any good behavior regulations of such jail or institution while so confined, and may be counted on good conduct diminution of sentence credit under such regulations as may be provided by the Department of Public Safety." Ill. Rev. Stat. 1965, chap. 38, par. 119—3.

This 1965 amendment is another manifestation of the concern that the General Assembly has recently demonstrated with respect to the operation of bail in criminal cases. That concern appears in article 110 of the Code of Criminal Procedure, enacted in 1963, which established a method by which an accused person may deposit ten per cent of the amount fixed for bail, with a return of ninety per cent of the amount deposited when the accused appears for trial. (Ill. Rev. Stat. 1965, chap. 38, par. 110—7.) The comments of the committee that drafted the Code state the considerations that prompted its concern with the administration of bail, and refer to much of the relevant literature. See S.H.A. chap. 38, art. 110; see also, Report of the Attorney General's

Committee on Poverty and the Administration of Criminal Justice, 1963; Freed and Wald, Bail in the United States: 1964; Foote, The Coming Constitutional Crisis in Bail II, 113 U. of Pa. L. Rev. 1125; Kamin, Bail Administration in Illinois, 53 Ill. Bar Jour. 674.

The concern of the General Assembly was demonstrated also in section 121—14 of the Code of Criminal Procedure, which requires that when a judgment of conviction is reversed, credit must be given, in the event of a subsequent sentence, for any portion of the sentence served while the appeal was pending. (Ill. Rev. Stat. 1965, chap. 38, par. 121—14.) In *People ex rel. Gregory* v. *Pate,* 31 Ill.2d 592, in construing this provision to operate retroactively, we said: "No rational purpose would be served in treating persons resentenced prior to January 1, 1964, in a completely different way than those resentenced after that date." 31 Ill.2d at 595.

In the 1965 amendment to section 119—3 which is now before us there is no room for construction, for the added provision explicitly states that it is to apply only to sentences "imposed on or after July 1, 1965." This restriction, the petitioner contends, violates the equal protection and due process clauses of the fourteenth amendment to the constitution of the United States, as well as the due process, special legislation and other provisions of the constitution of Illinois. In our opinion the petitioner's challenge to the validity of the clause that restricts the operation of the new provision to those convicted on or after July 1, 1965, must be sustained insofar as it relates to offenses which carry a mandatory minimum sentence. But the invalidity of the restrictive clause does not, in our opinion, affect the validity of the balance of the provision.

To justify the line that has been drawn between those convicted before July 1, 1965, and those convicted after that date, the respondent refers to section 1—7(g) of the Criminal Code, which provides for hearings in mitigation and

aggravation. (Ill. Rev. Stat. 1965, chap. 38, par. 1—7(g).) He says: "Prior to July 1, 1965, it was proper and necessary for the trial court to receive and apply evidence pertaining to the length of time which a defendant remained in jail prior to conviction and sentencing and said courts of this State did in fact use this evidence in mitigating the sentence to be imposed upon a defendant." The point is somewhat overstated, for the statute to which the respondent refers neither requires nor expressly authorizes trial judges to take into account in fixing sentences the time that a defendant has spent in jail awaiting trial. But upon the assumption that judges nevertheless did take that factor into account in fixing sentences, the respondent argues that to apply the new statute retroactively would result in double credit for time spent in jail before trial.

We need not now appraise the merit of this argument as it might apply to offenses other than those which carry a mandatory minimum term of imprisonment. Illegal possession of narcotics, of which the petitioner was convicted, carries a mandatory minimum sentence of not less than two years for the first offense. (Ill. Rev. Stat. 1963, chap. 38, par. 22—40.) As to this offense and others for which mandatory minimum sentences are provided, we can not accept the factual assumption that the respondent advances.

In any case in which the judge decided that the appropriate term of imprisonment to be served by a particular defendant was the mandatory minimum fixed by statute, he was barred from taking into account the time the defendant spent in jail awaiting trial. It is hypothetically possible, of course, that in any case in which the exact mandatory minimum sentence fixed by statute was imposed, the trial judge might have imposed a longer minimum sentence but for the fact that he took into account the time the defendant spent in jail awaiting trial. But the records in the felony cases that have come to this court over the years preclude realistic reliance upon this hypothesis. Because of the operation of

what is known as "the four month statute", (Ill. Rev. Stat. 1963, chap. 38, par. 748,) with its sanctions if a defendant is not brought to trial within the prescribed statutory period, only rarely, if ever, would a period as long as a year have elapsed between the arrest and the trial of any defendant. Yet the minimum sentences imposed have consistently run in terms of years,—one year to two years, two years to five years, and so forth. In felony cases minimum sentences have not been imposed in terms of fractions of a year.

Where the minimum sentence actually imposed exceeded the mandatory minimum, as for example when the mandatory minimum fixed by statute was imprisonment for one year, and the minimum sentence actually imposed was two years, it is again theoretically possible that the minimum sentence imposed took into account the time that the defendant had already spent in jail during the period between his arrest and his conviction. But again the operation of the four-month statute contradicts this hypothesis. For the minimum sentences that have come before this court, even when they have exceeded the mandatory minimum, have been based upon units of one year, and not upon fractions of a year. And while a delay as long as a full year between arrest and conviction is theoretically possible, it is nevertheless an unrealistic assumption upon which to predicate decision.

We approach the petitioner's claim of arbitrary discrimination, therefore, without the benefit of the factual assumption upon which the respondent relies. The petitioner's basic contention is that those who, because of their indigence, were financially unable to provide bail, were required to serve longer periods of imprisonment than those who were financially able to provide bail. Except as he has relied upon the factual assumption which we can not accept, the respondent does not dispute that this kind of discrimination has existed. Another type of potential discrimination results from the fact that under the 1965 amendment a prisoner's

right to credit for time spent in jail before sentence was imposed depends upon the fortuitous circumstance of the date upon which he was convicted. This additional discriminatory element becomes apparent if we consider the case of two defendants, jointly charged with the same offense, neither of whom was financially able to make bail. If their cases had been severed for trial, the defendant who was sentenced on July 1, 1965, would receive credit for the period during which he was incarcerated awaiting trial, while the defendant who was sentenced on June 30, 1965, would not.

We are of the opinion, therefore, that the clause which restricts the operation of the 1965 amendment to sentences "imposed on or after July 1, 1965", is invalid when applied to mandatory minimum sentences. With respect to such sentences, no rational purpose would be served by treating persons sentenced prior to July 1, 1965, in a completely different way than those sentenced after that date. We express no opinion as to the validity of the restrictive clause as applied to other sentences.

Our conclusion makes it necessary that we consider the separability of the restrictive clause. The remainder of the 1965 amendment is entirely workable even if the restrictive clause is not applied to offenses for which a mandatory minimum sentence is provided. And the demonstrated purpose of the General Assembly to eliminate, or reduce to a minimum, inequities resulting from the administration of bail convinces us that the 1965 amendment would have been enacted with the invalid portion eliminated. See, *People ex rel. Adamowski* v. *Wilson,* 20 Ill.2d 568, 582.

The petitioner is discharged.

*Petitioner discharged.*